# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ROBERT PROWELL          :
    Plaintiff          :
  v.          :          Civil Case No. L-10-3457
UPS FLEXIBLE BENEFITS PLAN          :
    Defendant          :

o0o
**<u>MEMORANDUM</u>**

This is an ERISA case. Plaintiff, Robert Prowell, individually and as guardian of SP, appeals the decision of Defendant, UPS Flexible Benefits Plan, denying benefits under the terms of a health benefit plan in which he is a participant. Now pending before the Court are the parties' Cross-Motions for Summary Judgment. Docket Nos. 28 and 31. The issues have been comprehensively briefed, and on September 9, 2011, the Court convened a hearing and heard oral argument. For the reasons stated herein, the Court will, by separate Order, DENY the parties' Cross-Motions for Summary Judgment and REMAND Plaintiff's claim to the plan administrator for a full and fair review consistent with this Memorandum Opinion.

## I. BACKGROUND

SP is a six-year-old girl who has been diagnosed with numerous medical problems, including "autism, pervasive developmental delay, gastroesophegeal reflux, and feeding disorder and mismanagement." Pl.'s Mot. Summ. J. 1, Docket No. 28. As a result of her condition, she has extreme difficulty consuming solid foods. SP underwent extensive evaluation at the

Kennedy Krieger Institute ("KKI"), a medical facility dedicated to the treatment of children and adolescents. The evaluation took place at KKI's Feeding and Swallowing Clinic, and involved review by experts in behavioral psychology, nutrition, speech and language therapy, and pediatric gastroenterology. Following this evaluation, doctors recommended SP's admission into KKI's Pediatric Feeding Disorders Program for a period of six to eight weeks.

Prowell, SP's father, is an employee of United Parcel Service ("UPS") and a qualified participant in the UPS Flexible Benefits Plan, Group Number 221775 (the "Plan"), pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The Plan provides coverage for, inter alia, "charges made by a physician or a licensed or certified physical or occupational therapist for furnishing short-term rehabilitation services for treatment of acute conditions . . . ." Administrative Record (hereinafter "AR") at 671. The terms of the Plan define rehabilitation as "physical therapy or occupational therapy for the improvement of a body function that has been lost or impaired due to injury or illness." Id. at 672.

United Healthcare Insurance Company ("United") is the Plan's third-party administrator; it is granted discretion under the Plan to perform certain administrative services, including preliminary determination of eligibility for benefits. On April 13, 2010, United denied Prowell's request for authorization on the ground that the requested services "are not eligible expenses under the patient's plan." Id. at 41. Specifically, United found that "[a] pediatric behavior modification program will treat food aversion which is not an illness or injury." Id.

Prowell appealed. On July 30, 2010, United upheld its earlier decision, but added a separate basis for the denial of benefits. In addition to the determination that there was no underlying disease or illness causing SP's condition, United stated that the proposed treatment

2

was "unproven" and cited a section of the Plan description that reads, "the following additional items are not covered. Treatments or procedures and related materials that are investigational or experimental in nature, as determined by the claims administrator." Id. at 155. The conclusion that the proposed treatment was experimental was based on the findings of Dr. Steven Lichtman, an independent pediatric gastroenterologist who reviewed SP's case. Dr. Lichtman was asked the following question:

> If there is an underlying medical disease/illness/injury which has resulted in this child's food aversions and the need for an intensive feeding therapy program, is the clinical data from well-conducted randomized controlled or cohort trials in the prevailing peer-reviewed published medical literature adequate to conclude that an intensive day treatment feeding program such as the multidisciplinary program offered by [KKI] for this child which includes pediatric GI services, nutrition, nursing , social services, occupational therapy, speech therapy, and behavioral psychology, [is] effective for the treatment of food aversions due to the above identified medical disease/illness(es) or injury(ies)?

Id. at 106. In response to this question, Dr. Lichtman answered simply, "No."[1] Id. In a later section of his report, captioned "Rationale," he elaborated:

> The current medical literature discusses feeding disorders and their treatment in the Policy. There are articles supporting intensive feeding programs; however, these articles represent small numbers, case reports, and no randomized controlled studies. There are no long-term follow-up studies, even for 6 to 12 months following an intensive feeding program.

Id.

Prowell appealed this decision as well. In support of his appeal, he submitted a letter from KKI responding to United's conclusions. See id. at 268–84; Compl. Ex. B, Docket No. 2-2. The letter recounts with some specificity KKI's success in treating children with severe

---

[1] Dr. Lichtman responded to this question despite his negative answer to the previous question, which asked whether he found evidence of an underlying disease, illness, or injury at all.

feeding disorders, and asserts that KKI has treated "well over a thousand children" over a 20-year period.  Id. at 3–4.  The letter also cites fourteen articles, including a "comprehensive review . . . [of] over 74 studies that examined the effectiveness of various behavioral interventions in treating feeding disorders," which KKI characterizes as "a small sample of the peer-reviewed articles that have been published from the data generated our [sic] program."  Id. at 1–3, 1.   The letter asserts, "In short, there is no basis whatsoever for your agency's contention that these programs are experimental or lack sufficient support in the scientific literature."  Id. at 3.

This second appeal was decided not by United, but by the UPS Claims Review Committee ("Review Committee"), which has authority under the Plan to issue final benefit determinations.  In aid of its decision, the Review Committee requested the opinion of another independent pediatric gastroenterologist, Dr. Ding-You Li.  Dr. Li determined that the previous reviews had been incorrect, and that there was in fact an underlying disease, illness, or injury that resulted in SP's food aversions.  See AR at 250.  Like Dr. Lichtman, however, Dr. Li also responded in the negative to the second question, quoted in full above, asking whether clinical data from well conducted randomized controlled or cohort trials established the effectiveness of the treatment.  See id. at 251.

Dr. Li's written report cited seven studies that he retrieved and reviewed, and concluded that "[a]ll of the above literature demonstrated the effectiveness of intensive interdisciplinary feeding for children with food refusal and feeding difficulty."  Id. at 252.  Dr. Li continued, however: "All the above-mentioned literatures [sic] are clinical experiences, case series or retrospective studies.  There has been no clinical data from well-conducted randomized controlled or cohort trials in the prevailing peer-reviewed published medical literature to

4

demonstrate the effectiveness of an intensive day treatment feeding program in children with food aversions." Id.

Based on Dr. Li's opinion, the Review Committee issued a final denial of benefits letter on October 15, 2010. See id. at 215–17. Following that denial, Prowell filed the instant suit on December 9, 2010. Both parties' Motions for Summary Judgment have been fully briefed, and the issues presented therein are ripe for decision.

## II. LEGAL STANDARD

ERISA actions are usually adjudicated on summary judgment rather than at trial. Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir. 2009). The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

"When both parties file motions for summary judgment . . . [a] court applies the same standard of review." McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 695 (D. Md. 2006) (citing Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991)). Furthermore, "each motion [will be considered by a court] separately on its own merits to determine whether either

of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

In reviewing a claim of wrongful denial of benefits under ERISA, the Court must first determine whether that plan vested the plan administrator with discretion to determine eligibility of the contested benefits. See Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 638 (4th Cir. 2007). The Court makes this determination de novo. Id. If the Court determines that the plan confers discretionary authority on the administrator, then the court reviews the administrator's decision under an abuse of discretion standard. Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315 (4th Cir. 2008).

Under the abuse of discretion standard, the Court must determine whether the administrator's denial of benefits was reasonable. See Groft v. Health Care Corp., 792 F. Supp. 441, 442 (D. Md. 1992). In determining reasonableness, the Court is limited to considering only such evidence as was before the administrator at the time its decision was made. See, e.g., Sutton v. Hearth & Home Distrib., Inc., 881 F. Supp. 210, 215 (D. Md. 1995).

### III. ANALYSIS

The question presented in this case is whether the Review Committee's determination that KKI's treatment is experimental and, therefore, not covered by the terms of the Plan, was reasonable.[2] Both parties agree that only the final decision of the Review Committee is at issue

---

[2] Prowell's Complaint contains only one Count, which the Court has interpreted as a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Complaint states, however, that the case "arises under . . . 29 U.S.C. § 1109 and § 1132(a)(1)(B)." Compl. 1, Docket No. 1 (emphasis added). Title 29 U.S.C. § 1109 is the provision of ERISA that establishes liability for breach of fiduciary duty.
 It is well established that when a beneficiary seeks benefits that should have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under 29 U.S.C.

in this litigation, and both agree that the Review Committee was vested by the Plan with discretionary authority to make benefit eligibility determinations. As discussed above, this means that the Court reviews the determination for abuse of discretion.

Under the abuse of discretion standard, "the district court functions as a deferential reviewing court with respect to the ERISA fiduciary's decision." Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 321 (4th Cir. 2008). As such, the administrator's decision will not be disturbed if it was reasonable, "even if [the court] would have come to a contrary conclusion independently." Williams v. Metro. Life Ins., Co., 609 F.3d 622, 630 (4th Cir. 2010). A decision is reasonable if it results from a "deliberate, principled reasoning process" and is "supported by substantial evidence." Frankton v. Metro. Life Ins. Co., 2011 WL 1977617, at *3 (4th Cir. May 23, 2011) (internal quotation marks omitted) (quoting Williams, 608 F.3d at 630). Substantial evidence is that "which a reasoning mind would accept as sufficient to support a particular conclusion," and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984).[3]

---

§ 1132(a)(1)(B), not a fiduciary duty claim. See Smith v. Sydnor, 184 F.3d 356, 362 (4th Cir. 1999). Prowell conceded at oral argument that his claim was fundamentally one for benefits under the terms of the plan, and that his sole remedy is found in § 502(a)(1)(B).

3      The Fourth Circuit has identified eight nonexclusive factors that courts may consider in reviewing the reasonableness of an administrator's decision: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342–43 (4th Cir. 2000).

Prowell contests both the integrity of the decisionmaking process and the sufficiency of the evidence, though his argument as to both is the same. It is clear from a review of the administrative record that the opinion of Dr. Li was by far the weightiest factor that the Review Committee took into consideration when making its final determination. Essentially, Prowell takes issue with the precise question that Dr. Li was called upon to answer. Dr. Li was asked specifically whether "clinical data from well-conducted randomized controlled or cohort trials" established the efficacy of the treatment. AR at 250. The operative language of the Plan, however, does not explicitly require randomized controlled or cohort trials. Rather, it states that

> the Plan does not cover services and supplies that are considered experimental or investigational. Experimental or investigational means that the medical use of a service or supply is still under study and the service or supply is not yet formally recognized throughout the medical profession in the United States as safe and effective for diagnosis or treatment.

Id. at 215, 476. Prowell urges that a lack of randomized controlled or cohort trials does not, in and of itself, mean that a treatment is experimental, and that the Review Committee abused its discretion in assuming otherwise. See Pl.'s Mot. Summ. J. 15, Docket No. 22 ("Whether such a trial has ever been conducted, of course, has nothing to do with a determination that the proposed program has been proven to be effective over many years for many patients.").

The review process undertaken in SP's case was extensive. It involved three separate levels of scrutiny as well as consultation, of one form or another, with four medical professionals.[4] Prowell was invited to, and did, submit information in support of his claim. Finally, Dr. Li's review of the available literature appears to have been thorough.

---

[4] The initial reviewing physicians gave way to consults from Dr. Lichtman and Dr. Li, because of their specialty in pediatric gastroenterology.

A scrupulous and diligent review may still be insufficient, however, if the reviewers are asking the wrong questions. The record reflects the extent to which the administrator, at every level, relied on the opinions of the consulting expert physicians. It also reflects that when these physicians disagree, the determination of the last physician controls. For these reasons, it is crucial that the Review Committee obtain Dr. Li's answer to the question actually put at issue by the plan language: Is this treatment experimental?

Dr. Lichtman shed some light on the proper inquiry when he wrote that the "articles supporting intensive feeding programs . . . represent small numbers, case reports, and no randomized controlled studies. There are no long-term follow-up studies, even for 6 to 12 months following an intensive feeding program." AR at 107. Even assuming that this would adequately support a finding that KKI's program was experimental, however, Dr. Li may have had a different opinion. This is especially true in light of the fact that Dr. Li had the benefit of KKI's response to the initial denials. Dr. Li reviewed several comprehensive studies, whereas Dr. Lichtman lists only two. Moreover, Dr. Li's statement that "[a]ll of the above literature demonstrated the effectiveness of intensive interdisciplinary feeding for children with food refusal and feeding difficulty" may hint at his views concerning the extent to which the treatment in question is formally recognized as safe and effective. Id. at 252.

Unfortunately Dr. Li was never asked, and therefore never addressed, whether the treatment is generally accepted as safe and effective or not. This means that there is insufficient evidence in the administrative record to support the finding that the treatment is experimental, and that the Review Committee's process was flawed. Without a more complete explication, the Court cannot accept the Defendant's assertion, implied in the denial of benefits but never made

9

explicit, that randomized controlled or cohort trials are the only method by which a treatment may become generally accepted.

Prowell would have the Court go one step further, and find as a matter of law that the evidence supports his position that KKI's treatment is "formally recognized throughout the medical profession in the United States as safe and effective," and, therefore, covered under the terms of the Plan. Id. at 476. The Court, however, is both unwilling and unqualified to make such a determination. It would be a different matter if, for example, the contested issue were the efficacy or necessity of the treatment. The Court could then simply weigh the evidence on both sides and decide whether the plan administrator overstepped its discretion in coming down on one side or the other. See Stup v. UNUM Life Ins. Co. of America, 390 F.3d 301, 308 (4th Cir. 2004) (conflicting evidence on which the administrator relies in denying coverage must be "substantial"). Whether a given treatment is experimental, however, is a question not directly addressed by any evidence in the record, and one that requires medical knowledge in order to answer.

"[T]he administration of benefit and pension plans should be the function of the designated fiduciaries, not the federal courts." Bernstein v. Capital Care, Inc., 70 F.3d 783, 788 (4th Cir. 1995). For this reason, remand is the general rule, and reversal of the administrator's decision the exception. "If the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation." Gorski v. ITT Long Term Disability Plan for Salaried Employees, 314 F. App'x 540, 548 (4th Cir. 2008) (citations omitted). Remand is "most appropriate whe[n] the plan itself commits the trustees to consider relevant information which they failed to consider . . . ." Elliott v. Sara Lee Corp., 190 F.3d 601, 607 (4th Cir. 1999).

Because the Court finds that the Review Committee failed to obtain and consider sufficient evidence on the subject of the KKI treatment's experimental status—or, if it did, to adequately explain the reasons for its decision[5]—remand is the proper remedy. The case will be remanded for fuller consideration of whether the KKI's methods have gained formal recognition throughout the medical profession.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will, by separate Order of even date, DENY the parties' Cross-Motions for Summary Judgment and REMAND Plaintiff's claim to the plan administrator for a full and fair review consistent with this Opinion.

The parties are directed to confer and to submit, within 14 days following the issuance of this Memorandum, a proposed schedule for remand, consideration, and decision of SP's case.

Dated this 26th day of October, 2011

/s/
_____
Benson Everett Legg
United States District Judge

---

[5] For example, the Review Committee may have knowledge or information establishing that randomized controlled or cohort trials are, in fact, a necessary and indispensible predicate for a treatment to become formally accepted within the meaning of the Plan terms. If so, Dr. Li's finding that no such trials had been conducted would form sufficient basis for the Review Committee's decision. No such information is currently in the record, however.